# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| BARBARA HAMILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08-3277-CV-S-MJW |
| ) | |
| MISSOURI DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING PLAINTIFF HAMILTON'S MOTION FOR NEW TRIAL

### I. Introduction

Plaintiff Barbara Hamilton is employed by the Missouri Department of Corrections (MDOC) at its Ozark Correctional Center in Fordland, Missouri. Plaintiff was employed as a Corrections Officer I during the time frame which formed the basis for her lawsuit. Plaintiff alleged that she was retaliated against for filing a lawsuit against MDOC and several employees in 2006 when a hidden video surveillance camera was placed in the mail room building where she had been temporarily assigned to work. She also alleged she was retaliated against when she was required to attend a firearms familiarization class during a period when she was on light duty because of an injury. She further alleged she was retaliated against when a defendant from her prior 2006 lawsuit was in the building when she was attempting to give a urine sample for a random drug test.

On January 24, 2011, a jury trial commenced at the United States Courthouse in Springfield, Missouri, and at the conclusion of the five-day trial ,the jury returned a verdict in favor of defendant MDOC. Plaintiff alleges the following errors occurred at trial and in the Court's pretrial rulings:

    1. The trial court erred in denying admission of the investigative report prepared by defendant concerning plaintiff Hamilton's complaint and the letter of reprimand given Warden Virgil Landsdown ;

      2. The trial court erred in refusing plaintiff Hamilton's jury instruction concerning the contributing factor analysis rather than the determining factor analysis and by refusing to give an adverse inference instruction concerning the destruction of the original video footage recorded by the surveillance camera;

      3. The trial court erred by entering summary judgment on plaintiff Hamilton's Missouri Human Rights Act retaliation claim;

      4. The trial court erred in dismissing the individual defendants prior to trial;

      5. The trial court erred in entering summary judgment on plaintiff Hamilton's claim of sexual harassment under the Missouri Human Rights Act; and

      6. The verdict reached by the jury is against the weight of the evidence.

## II. Legal Standard

The key question in determining whether a new trial is warranted is whether it is necessary to prevent a miscarriage of justice. Haigh v. Gelita USA, Inc., 632 F.3d 464 (8th Cir. 2011). "A new trial should be granted only if the evidence weighs heavily against the verdict." Maxfield v. Cintas Corp., No. 2, 563 F.3d 691, 694 (8th Cir. 2009). Although the Court has discretion to set aside the jury verdict and grant a new trial, it "may not do so merely because it believes that the evidence permitted different inferences or that another result would be more reasonable." Blake v. J.C. Penney Co., 894 F.2d 274, 281 (8th Cir. 1990). Instead, "the [C]ourt must conclude that the jury reached a seriously erroneous result and must state its reasons for this belief." Id. The burden of demonstrating that error warrants a new trial rests with the moving party. Ricketts v. City of Columbia, Mo., 856 F. Supp. 1337, 1347 (W.D. Mo. 1993).

## III. Investigative Report and Letter of Reprimand

A. Investigative Report of Sondra Doyle

Plaintiff first contends that the Court erred when it excluded admission of a lengthy investigative report prepared by MDOC Human Resources Officer Sondra Doyle. The Court believes it properly excluded the investigative report. Ms. Doyle was permitted to testify about how she conducted her investigation, whom she interviewed, the conclusions she reached, and the actions she took upon the completion of her investigation. Ms. Doyle conducted her inquiry in an effort to assist the Director of Adult Institutions and MDOC prepare their responses to plaintiff's employee grievance concerning the mailroom surveillance camera. That inquiry generated two reports (Plaintiff's Exhibit 2). Both before and during the trial, the Court ruled

that it intended to exclude the reports because they were replete with hearsay statements of witnesses who were not going to be called to testify at trial. The reports contained multiple layers of inadmissible hearsay and improper opinions. Investigative reports are inadmissible unless each level of hearsay falls within an exception to the hearsay rule. United States v. Taylor, 462 F.3d 1023, 1026 (8th Cir. 2006) (quoting United States v. Ortiz, 125 F.3d 630, 632 (8th Cir. 1997)). The report itself is the first layer of hearsay and does not fall under any exception to the hearsay rule. The reports are not admissible under Federal Rule of Evidence 803(8)(c) because they are not "an investigation made pursuant to authority granted by law." The Human Resources Division of the Missouri Department of Corrections where Ms. Doyle worked does not have authority granted by law to conduct investigations into employee grievances. The reports are filled with a second layer of hearsay in the form of summaries of interviews Ms. Doyle conducted. Admission of the reports containing the hearsay statements would have been unfair to defendant because there would have been no way for defense counsel to cross-examine the individuals who were the subjects of the interviews. Unsworn statements to investigators are inadmissible double hearsay. Sanders v. City of Minneapolis, Minnesota, 474 F.3d 523, 527 (8th Cir. 2007); Walker v. Wayne County, Iowa, 850 F.2d 433, 435 (8th Cir. 1988). Finally, the reports include opinion testimony, which is also inadmissible. Rule 803 prohibits the admission of records that contain opinions or conclusions resulting from investigations. United States v. Harris, 557 F.3d 938, 941 (8th Cir. 2009).

In Miller v. Field, 35 F.3d 1088, 1088-93 (6th Cir. 1994) (citing United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983)), an action brought under Title 28, United States Code, Section 1983, stemming from the plaintiff's alleged rape by other inmates, the Court reversed, remanded, and found that the trial court abused its discretion by admitting a police report as a public record because it contained statements made by the plaintiff, alleged assailants and other witnesses that amounted to inadmissible hearsay within hearsay. Also see Parsons v. Honeywell, Inc., 929 F.2d 901, 907-08 (2nd Cir. 1991).

The investigative reports of Sondra Doyle were properly excluded and plaintiff's allegation that the Court erred is without merit.

B.  Letter of Reprimand

Plaintiff next contends the Court erred when it excluded a Letter of Reprimand given to Warden Virgil Lansdown.  The Court would have permitted the letter into evidence if the Warden had been called to testify at trial and so informed the parties.  Plaintiff apparently decided not to call the Warden to testify at trial.  Consequently, there was not a proper foundation laid for the admission of the letter.  The Letter of Reprimand was properly excluded.

### IV.  Jury Instructions

Plaintiff next contends the Court committed error in two of its jury instructions.  First, plaintiff contends the verdict directing instruction number 16 was improper because the Court utilized 8th Circuit Model Jury Instruction No. 5.61 which uses the term "determining factor," rather than Missouri Approved Instruction language which uses the term "motivating factor" in a retaliation claim.  Second, plaintiff contends the Court erred when it refused to give an adverse inference instruction regarding the destruction of the original video surveillance recording when it was returned to the manufacturer because it had malfunctioned.  Both points of error are without merit and are denied.

A.  The "Determining Factor" Language of Verdict Directing Instruction Number 16

The verdict director (Doc. 114, Instruction No. 16) correctly instructed the jury on the law.  The Court instructed the jury that in order to find in plaintiff's favor, it must find that "the plaintiff's filing of a complaint of discrimination was a determining factor in the defendant's actions."  Id.  This language was taken directly from 8th Circuit Model Civil Jury Instruction 5.61.  "Determining factor," not "motivating factor," is the correct standard for Title VII retaliation claims.  See Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144, 1148 (8th Cir. 2008) ("To make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative-not merely motivating-factor' in the employer's adverse employment decision."); Carrington v. City of Des Moines, Iowa, 481 F.3d 1046, 1053 (8th Cir. 2007) (determining factor is the standard the jury would use in a Title VII retaliation claim).  The Court correctly instructed the jury regarding the standard for causation in plaintiff's Title VII retaliation claim.

4

B.  Refusal to Give Adverse Inference Instruction

Plaintiff further contends the Court erred when it failed to give an adverse inference instruction to the jury concerning MDOC employee Ron Carter's failure to preserve the original recordings obtained through placement of the hidden video surveillance camera.  Mr. Carter was employed at Ozark Correctional Center as a prison security investigator and was primarily responsible for the installation and operation of the video camera.  Mr. Carter admitted he had recorded over the original footage and that the DVR used to record the footage had been returned to the manufacturer because it was malfunctioning and was subsequently destroyed.  As a result, plaintiff contends an adverse inference instruction concerning destruction of the device should have been submitted to the jury.

The Court disagrees.  Plaintiff was not entitled to the adverse inference instruction because the DVR was returned to the manufacturer before any claim was filed by plaintiff.  There is no evidence to indicate in any way that Ron Carter or any other employee at the Ozark Correctional Center was purposely trying to destroy evidence or was acting in bad faith when the DVR was returned to the manufacturer.

In order for an adverse inference instruction to be given against a party due to spoliation of evidence, the court must first find the evidence was intentionally destroyed by a party in a desire to suppress the truth.  Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 746 (8th Cir. 2004); Lewy v. Remington Arms Co., 836 F.2d 1104, 1111-12 (8th Cir. 1988) (citing federal law for the general proposition that the adverse inference instruction is appropriate only where the spoliation or destruction of evidence is intentional and indicates a fraud or desire to suppress the truth).  "A finding of bad faith is necessary before giving an adverse contained inference instruction at trial against a [party] for the destruction of evidence."  Menz v. New Holland North America, Inc., 440 F.3d 1002, 1006 (8th Cir. 2006).  Finally, the party requesting the adverse inference instruction must have been prejudiced by the evidence's destruction.  Stevenson, 354 F.3d at 747.  A party is only prejudiced due to the destruction of evidence when there are no copies, or other records of the information that evidence had contained.  Id.

The undisputed evidence presented at trial was that the footage from the camera in the mail room building was recorded on a DVR in Ronald Carter's office.  Prior to the filing of this

5

lawsuit, the DVR in question was malfunctioning and was returned to the manufacturer because it was still under warranty and a replacement DVR could be obtained. However, a copy of the complete footage from the camera in the mail room building had already been copied by Mr. Carter and was provided to the Inspector General's Office. The copy was preserved and subsequently provided to the plaintiff during discovery. Consequently, the plaintiff was not prejudiced and there was no basis for giving an adverse inference instruction regarding the footage.

The Court further notes that it first raised the issue of the possibility of an adverse instruction in discussions with counsel for plaintiff and defendant upon learning through testimony that the original recording was not available. However, once additional testimony was received from Mr. Carter concerning the circumstances surrounding the loss of the original recording on the DVR, the Court became convinced there was no bad faith involved and that a copy of the original recording had been properly preserved. The Court finds the testimony of Mr. Carter on this particular issue to be credible and reliable and a thorough record was made on this issue during the trial.

**V. Summary Judgment on Plaintiff's Missouri Human Rights Act Retaliation Claim**

Plaintiff next contends the Court erred when it granted summary judgment on her retaliation claim made under the Missouri Human Rights Act (MHRA). The Court disagrees. On June 23, 2010, the Court entered a 14-page Order granting, in part, and denying, in part, defendants' motion for summary judgment. (Doc. 76.) The Court granted summary judgment in favor of defendants on plaintiff's retaliation claim under the MHRA. To show that she was retaliated against under the MHRA, a plaintiff must show that: (1) she complained of discrimination; (2) the employer took adverse action against her; and (3) a causal relationship existed between the complaint of discrimination and the adverse employment action. Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 245 (Mo. App. E.D. 2006) (citing Thompson v. Western-Southern Life Assur., 82 S.W.3d 203, 207 (Mo. App. E.D. 2002)). An adverse action can take several forms, including denying advancement, salary, and pay increases, as well as assignment to less desirable jobs or locations. Crow v. Crawford & Co., 259 S.W.3d 104, 118

(Mo. App. E.D. 2008) (citing Palermo v. Tension Envelope Corp., 959 S.W.2d 825, 828 (Mo. App. E.D. 1997)).

Plaintiff did not demonstrate that a term, condition, or privilege of her employment was affected by the alleged retaliatory acts. When her light duty assignment in the mail room ended, plaintiff was assigned to the same duties at the institution that she had before her injury. Plaintiff was not demoted nor was her pay decreased. She did not even apply for a different assignment or promotion. Plaintiff failed to come forward with any evidence that she suffered an adverse employment action. Evidence of an adverse employment action is required for a claim under the MHRA. Buchheit, Inc., v. Missouri Com'n on Human Rights, 215 S.W.3d 268, 277 (Mo. App. 2007). The Court has fully explained its reasons for granting summary judgment previously and believes the ruling is correct. Further discussion beyond the Court's Order of June 23, 2010, is unnecessary.

**VI. Substitution of the Individual Defendants with Missouri Department of Corrections.**

Plaintiff next contends that the Court erred when it dismissed the individual defendants and substituted MDOC as the defendant. This was not a dismissal, as plaintiff claims, but a substitution for the real party in interest and was appropriate.

The Court granted summary judgment on all claims against the individual defendants Lansdown, Carter, O'Connell, and Burkdoll "except plaintiff's Title VII retaliation claims against defendants in their official capacities." (Doc. 76 at 14.) As the Court noted in its order granting summary judgment, in part, the defendants remain only in their official capacities which are, in essence, claims against the State. (Doc. 76 at 6); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Title VII does not permit an action against an individual supervisor because liability is borne solely by employers. Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144, 1147 (8th Cir. 2008). See also Spencer v. Ripley County State Bank, 123 F.3d 690, 691-92 (8th Cir. 1997). A suit against a state official in his "official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citations omitted). "[I]t is no different from a suit against the State itself." Id. Thus, the state entity already named in this case was the appropriate defendant for all claims. By dismissing all individual capacity claims against the individual defendants, their offices, and not the

7

individuals, are the sole defendants. Therefore, the state agency, in this case MDOC, is the real party at interest. The substitution was appropriate as a result of the Court's summary judgment ruling dismissing all claims against the individual defendants.

In addition, plaintiff's allegation that individuals are liable under Title VII is not an accurate statement of the law in this circuit. The Eighth Circuit has repeatedly held that there is no individual liability under Title VII. See Schoffstall v. Henderson, 223 F.3d 818, 821 n.2 (8th Cir. 2000); Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1111 (8th Cir. 1998) (citing Bonomolo-Hagen v. Clay Central-Everly Comm. Sch. Dist., 121 F.3d 446, 447 (8th Cir. 1997)); Spencer v. Ripley County State Bank, 123 F.3d 690 (8th Cir. 1997); Lenhardt v. Basic Inst. of Tech., 55 F.3d 377, 381 (8th Cir. 1995); Smith v. St. Bernards Regional Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).

**VII. Summary Judgment on Missouri Human Rights Act Sexual Harassment Claim.**

Plaintiff next contends the Court erred when it entered summary judgment against her on her claim of sexual harassment under the Missouri Human Rights Act (MHRA). Again, the Court disagrees. The Court previously entered its Order granting summary judgment in favor of defendants on this same issue. (Doc. 76.)

Title VII and the MHRA claims are governed by essentially the same standards. Hervey v. County of Koochiching, 527 F.3d 711, 719 (8th Cir 2008). Under the MHRA, it is "an unlawful employment practice for an employer, because of race, color, religion, national origin, sex, ancestry, age or disability of any individual to . . . discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment. . . ." Mo. Rev. Stat. § 213.055.1(1)(a)(b) (2004). Discrimination is defined under the MHRA in relevant part as "any unfair treatment based on based on . . . sex . . . as it relates to employment, disability or familial status." Mo. Rev. Stat. § 213.010(5).

To establish a hostile work environment claim under the MHRA, a plaintiff must show: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) her gender was a contributing factor in the harassment; and (4) a term, condition, or privilege of her employment was affected by the harassment. Hill v. Ford Motor Co., 277 S.W.3d 659, 666 (Mo. 2009). A plaintiff can show that a term, condition, or privilege of her employment was

8

affected by harassment by "showing that the harassment contributed to cause a 'tangible employment action.'" Id. A tangible employment action is a "significant change in employment status" and "the means by which the supervisor brings official power of the enterprise to bear on subordinates," and usually, but not always, involves "direct economic harm." Id. (quoting 8 CSR 60-3.040(17)(D)(3)).

As set forth above in section V relating to summary judgment against plaintiff with respect to her MHRA retaliation claims, plaintiff has failed to come forward with evidence that she suffered an adverse employment action. Evidence of an adverse employment action is required for a claim under the MHRA. Buchheit, Inc. v. Missouri Com'n on Human Rights, 215 S.W.3d 268, 277 (Mo. App. W.D. 2007). Plaintiff has failed to come forward with evidence from which a reasonable jury could conclude that her rights have been violated under the MHRA.

### VIII. Sufficiency of the Evidence

There was sufficient evidence that defendant's actions in placing the surveillance camera in the mail room building, allowing a prior defendant to remain in the building where he worked during plaintiff's urinalysis testing, and assigning plaintiff to firearms familiarization training were not an effort to retaliate against plaintiff. While there also may have been sufficient evidence introduced in favor of the plaintiff to support a verdict in her favor if the jury had been so inclined, the Court cannot conclude that the "jury reached a seriously erroneous result" as is required for this Court to order a new trial. Blake, 894 F.2d at 281. The Court is an avid believer of the jury trial as a means to resolve conflict and is extremely reluctant to tamper with a jury verdict under any circumstances. If the jury had returned a verdict in favor of plaintiff, the Court would have reached the same conclusion as here. The jury obviously found the testimony in favor of defendant to be more credible and persuasive. And the evidence introduced was more than sufficient to support the jury's decision.

On a retaliation claim under Title VII, the plaintiff had the burden of proving that the defendant would not have placed the camera, interfered with her urinalysis testing, and assigned her to firearms training but for the plaintiff's prior complaint of discrimination. See Eighth Circuit Model Jury Instruction 5.61 (emphasis added); see also Van Horn, 526 F.3d at 1148. Defendant produced several witnesses who provided reasons for its conduct other than the

9

alleged retaliatory animus.  The jury, by its verdict, apparently chose to accept the testimony of those witnesses as more persuasive.

Defendant produced evidence at trial that it installed the surveillance camera, not to retaliate against plaintiff, but to investigate claims that supervisory staff were leaving the secured perimeter of the prison to visit the mail room building when they should have remained at their posts.  Defendant also produced evidence at trial that Sgt. Weeks worked in the building where plaintiff's urinalysis testing was conducted and made no actions to intimidate, retaliate, or otherwise interfere with her urinalysis.  Sgt. Weeks testified he acted in the same manner during plaintiff's urinalysis testing as he did for any other employee's test.  Defendant also introduced testimony at trial that plaintiff was assigned to handgun familiarization training along with every other custody officer at Ozark Correctional Center in order to become familiar with a new Glock handgun, not in an attempt to retaliate against plaintiff.  The jury, by its verdict, also apparently accepted this testimony as more persuasive.

Finally, plaintiff's allegation that the temporal proximity of the alleged retaliatory conduct to her past complaint of discrimination belies the defendant's nonretaliatory reasons is not sufficient under the law.  While temporal proximity can suffice to show this causal connection, generally more than the timing of two events is required.  Smith v. Fairview Ridges Hosp., 625 F.3d 1076, 1087 (8th Cir. 2010).  Those cases which have found that temporal proximity was sufficient to show retaliation require such proximity to be very close.  Id. at 1087-88 (a two-month interval between two acts has been found to be insufficient as a matter of law).  The temporal proximity of fourteen months between the filing of the 2006 lawsuit and the placement of the camera in this case is not sufficient.  Similarly, plaintiff cannot show sufficient temporal proximity between the filing of her first lawsuit and her assignment to handgun familiarization training or Weeks' alleged retaliatory conduct.  A gap of approximately fifteen months and twenty months, respectively, between protected activity and the alleged retaliatory conduct is clearly insufficient.  Id.

Here, the evidence was clearly sufficient to support the jury's verdict.

## IX. Conclusion

Having fully considered plaintiff Hamilton's Motion for New Trial, and the responses of defendant Missouri Department of Corrections, the Court DENIES plaintiff's motion. [127]

Dated this 4th day of April, 2011, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge